Tamara M. Rowles (SBN 228940)
Email: trowles@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, California 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080

William Ross Overend (SBN 180209)
Email: woverend@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, California 94105-3659
Telephone: (415) 543-8700
Facsimile: (415) 391-8269

Gregory J. Vogler (*pro hac vice*)
Email: gvogler@mcandrews-ip.com
Robert A. Surrette (*pro hac vice*)
Email: bsurrette@mcandrews-ip.com
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

Attorneys for Defendant
STRYKER CORPORATION

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| TRIMED, INC.<br>a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>STRYKER CORP,<br>a Michigan corporation,<br><br>    Defendant. | CASE NO. CV-06-1918-SVW-SH<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT STRYKER CORPORATION'S MOTION TO BIFURCATE LIABILITY ISSUES FROM DAMAGES AND WILLFULNESS ISSUES**<br><br>Date: August 30, 2010<br>Time: 1:30 p.m.<br>Hon. Stephen V. Wilson |

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ……………………………………………….…….. ii

I.  INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................. 2

III. THE COURT SHOULD BIFURCATE THE LIABILITY ISSUES FROM THE DAMAGES AND WILLFULNESS ISSUES ................................. 4

    A. Patent Cases Raise Complex Legal Issues That Are Readily Amendable To Bifurcation ........................................................................ 4

    B. The Alleged Damages And Willfulness Issues Do Not Substantially Overlap With Technical Issues Of Invalidity ...................... 6

    C. Bifurcation Will Promote The Efficient And Economic Resolution Of This Case ............................................................................................... 8

    D. Bifurcation Will Reduce Juror Confusion .................................................. 10

    E. Bifurcation Will Reduce The Prejudice To The Parties .......................... 13

IV. CONCLUSION ................................................................................................ 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Air-Shields, Inc. v. BOC Group*,
  23 U.S.P.Q.2d 1955 (D. Md. 1992) ................................................. 4, 5, 6, 7, 11, 12

*Avia Group Int'l, Inc. v. Nike, Inc.*,
  22 U.S.P.Q.2d 1475 (D. Or. 1991) ................................................................ 6, 7, 10, 11

*Cherdak v. Stride Rite Corp.*,
  396 F. Supp. 2d 602 (D. Md. 2005) ........................................................... 4, 5, 6, 12

*Ciena Corp. v. Corvis Corp.*,
  210 F.R.D. 519 (D. Del. 2002) .................................................................... 4, 12

*Eaton Corp. v. Auburn Gear, Inc.*,
  8 U.S.P.Q.2d 1373 (N.D. Ind. 1988) ............................................................. 4, 5, 8

*Engel Indus., Inc. v. Lockformer Co.*,
  166 F.3d 1379 (Fed. Cir. 1999) ........................................................................ 3, 9

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................... 8

*Giro Sport Design, Inc. v. Pro-Tec, Inc.*,
  10 U.S.P.Q.2d 1863 (N.D. Cal. 1989) ............................................................. 4, 5

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007) ......................................................................... 7

*Jiles v. S. Cal. Gas Co.*,
  No. 99-520, 2001 U.S. Dist. LEXIS 26297
  (C.D. Cal. Apr. 11, 2001) ................................................................................. 5

*Lemelson v. Apple Computer Inc.*,
  28 U.S.P.Q.2d 1412 (D. Nev. 1993) ..................................................... 6, 8, 10, 12

*Novopharm Ltd. v. Torpharm, Inc.*,
  181 F.R.D. 308 (E.D.N.C. 1998) ............................................................ 5, 8, 10, 11

*Ortho-McNeil v. Teva Pharms. USA*,
  No. 02-2794, 2003 U.S. Dist. LEXIS 27901
  (D.N.J. Jan. 28, 2003) ................................................................................. 7, 13

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  No. 08-542, 2009 U.S. Dist. LEXIS 76010
  (D. Del. Aug. 26, 2009) ......................................................... 4, 5, 7, 9, 10, 12, 13

*Russell William, Ltd. v. ABC Display & Supply, Inc.*,
  No. 88-265, 1991 U.S. Dist. LEXIS 3814
  (E.D.N.Y. Mar. 26, 1991) ................................................................................ 10

*Sage Prods., Inc. v. Devon Indus., Inc.*,
 No. 93-2403, 1994 U.S. Dist. LEXIS 21634
 (C.D. Cal. Jan. 24, 1994) ............................................................................ 5, 7, 8, 12

*Scientific-Atlanta, Inc. v. Gen. Instrument Corp.*,
 27 U.S.P.Q.2d 1158 (D. Md. 1993) ..................................................................... 5, 10

*Swofford v. B & W, Inc.*,
 336 F.2d 406 (5th Cir. 1964) ....................................................................................... 6

*Voda v. Cordis Corp.*,
 536 F.3d 1311 (Fed. Cir. 2008) .................................................................................. 7

*Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier, Inc.*,
 59 U.S.P.Q.2d 1088 (C.D. Cal. 2001) ..................................................... 4, 5, 6, 11, 12

**Statutes**

35 U.S.C. § 102 ............................................................................................................. 11

35 U.S.C. § 103 ............................................................................................................. 11

**Rules**

Federal Rule of Civil Procedure 42 ........................................................... 2, 4, 5, 10, 13

## I. INTRODUCTION

In a separate contemporaneously-filed motion, Defendant Stryker Corporation ("Stryker") has moved to stay this litigation pending the reexamination of the patent-in-suit by the United States Patent and Trademark Office. In the alternative, Stryker respectfully moves to bifurcate alleged liability issues from any issues of alleged damages and willfulness. Such relief, which is routinely granted in patent cases, is warranted for at least three reasons.

***First***, bifurcation of liability from damages and willfulness will conserve judicial resources and lead to a more streamlined and economic resolution of this case. If the jurors determine that Stryker is not liable for patent infringement (which Stryker believes is the case), any trial on damages and willfulness issues will be avoided. The conservation of resources and efforts for both the Court and the parties is even more pronounced in this case. Although discovery is closed, Plaintiff TriMed, Inc. ("TriMed") has indicated its desire to essentially re-open damages discovery and seek leave to file – for the first time – damages-related expert reports, over Stryker's objection. TriMed's forthcoming request will lead to increased motion practice, which could be avoided and eventually rendered moot if the Court bifurcates this case and the patent-in-suit is held invalid.

***Second***, bifurcation will facilitate the jurors' understanding of the complex legal issues involved in this patent case. Liability issues in this case will center around the invalidity of the asserted claims of the patent-in-suit. This will require the jurors to understand and evaluate certain patent law issues and numerous technical documents as well as technical testimony from both fact and expert witnesses. Damages issues in patent cases also raise complex legal and factual issues, many of which are distinct from the liability issues and involve an entirely different set of documents and issues. For example, the statutorily prescribed reasonable royalty damages require the analysis of fifteen complex factors. Moreover, if TriMed is allowed to proceed with other damages theories, the jurors will be forced to understand and evaluate additional

equally complex legal and factual issues. Because the complex evidence and testimony related to damages and willfulness are separate from the evidence and testimony related to liability, bifurcating the issues will allow the jurors to focus on one set of issues at a time without getting distracted with other irrelevant evidence and issues.

***Third***, bifurcation will reduce the prejudice to the parties. As a threshold matter, bifurcation will help the jurors to try to understand the issues they are charged with deciding. Moreover, in light of TriMed's indication that it will pursue a claim of alleged willful infringement, bifurcation will ensure that the jurors are not distracted or clouded with this prejudicial alleged evidence when deciding the issue of liability.

Accordingly, because the purposes of Federal Rule of Civil Procedure 42(b) will be served by bifurcating the liability issues from the damages and willfulness issues, Stryker respectfully requests that the Court grant its motion to streamline the case at this stage of the proceedings.

## II. STATEMENT OF FACTS

In this patent infringement action, TriMed has alleged that seven claims of the patent-in-suit are infringed by Stryker products. (*See* Docket Nos. 1 & 67; *see also* Ex. A, Aug. 23, 2006 Drake Letter.)[1] Stryker contends that those claims are invalid in light of numerous prior art references. Trial as to the invalidity issues will involve the technical testimony from both fact and expert witnesses and require the evaluation of Stryker's prior art references.

In addition to liability issues, this case also raises issues of damages and willfulness. Notably, TriMed's alleged damages alone raise numerous complex issues, especially given that the scope of damages and the type of evidence on which TriMed might rely is itself highly contested. For example, during the course of discovery (which is now closed), Stryker submitted an expert report that included an opinion that

---

[1] "Ex. ___" refers to documents attached to the Declaration of Robert A. Surrette, filed concurrently herewith.

a reasonable royalty of five percent of sales of the accused products would be an appropriate measure of damages if liability is found. Despite having the opportunity to do so, TriMed never submitted an expert report of its own. In fact, TriMed is precluded from doing so now by a Court order.[2] (*See* Docket No. 45). Nevertheless, after reviewing Stryker's expert report defending against any alleged damages, TriMed now unfairly indicates that it will seek leave of Court to file an untimely expert report. TriMed should have filed any expert reports before Stryker did, and the issue of whether TriMed may submit any expert reports will be highly contested and the subject of motion practice.

Moreover, despite being served with an interrogatory requesting specific information regarding its damages theories (*e.g.*, "the amount of damages," and a detailed description of, for example, the "calculations and facts upon which the amount is based"), TriMed has failed to provide any substantive information. (Ex. B, TriMed's Resp. To Interrog. No. 11.) Despite its failure to provide such information during discovery, TriMed now also alleges that it will pursue a claim for lost profits – another issue that will be contested and litigated.

Thus, while discovery is closed, much motion practice awaits regarding the damages issues in this case. Moreover, if trial is even needed as to damages and willfulness, that trial will involve complex factual and legal issues and require evidence and testimony from numerous fact witnesses and from Stryker's expert regarding financial and economic issues wholly distinct from any issues of liability.

---

[2] Notably, TriMed is also precluded from now submitting an expert damages report by the law of the case doctrine and/or the mandate rule, in light of TriMed's failure to appeal that Court order in a prior appeal of this case. *See Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382-84 (Fed. Cir. 1999).

### III. THE COURT SHOULD BIFURCATE THE LIABILITY ISSUES FROM THE DAMAGES AND WILLFULNESS ISSUES

#### A. Patent Cases Raise Complex Legal Issues That Are Readily Amendable To Bifurcation

Pursuant to Federal Rule of Civil Procedure 42(b), a district court has broad discretion to bifurcate separate issues "[f]or convenience, to avoid prejudice, **or** to expedite and economize." Fed. R. Civ. P. 42(b) (emphasis added); *see also Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier, Inc.*, 59 U.S.P.Q.2d 1088, 1089 (C.D. Cal. 2001); *Giro Sport Design, Inc. v. Pro-Tec, Inc.*, 10 U.S.P.Q.2d 1863, 1864 (N.D. Cal. 1989) ("It should be noted that the Fed. R. Civ. P. 42(b) standards are in the disjunctive instead of in the conjunctive.").

"[B]ifurcation is an important discretionary tool that district courts can use in patent cases to ensure that the cases are resolved in a just manner by juries that understand the complex issues before them." *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002); *Robert Bosch LLC v. Pylon Mfg. Corp.*, No. 08-542, 2009 U.S. Dist. LEXIS 76010, at *2 (D. Del. Aug. 26, 2009) ("[B]ifurcation is appropriate, if not necessary, in all but exceptional patent cases."); *Cherdak v. Stride Rite Corp.*, 396 F. Supp. 2d 602, 604 (D. Md. 2005) ("Granting motions to bifurcate will likewise serve the interests of 'expedition and economy.'"). Notably, "[t]he most common application of Rule 42(b) in patent cases involves a separation of the liability issues from the damage issues." *Eaton Corp. v. Auburn Gear, Inc.*, 8 U.S.P.Q.2d 1373, 1374 (N.D. Ind. 1988); *accord Air-Shields, Inc. v. BOC Group*, 23 U.S.P.Q.2d 1955, 1956 (D. Md. 1992) ("Courts have not hesitated to separate the issues of damages and liability in patent suits pursuant to Rule 42(b) in appropriate circumstances."). Indeed, "[i]n many districts, this division is routine practice, and the court will make the necessary order on its own initiative, at the pretrial [conference] if not before." *Eaton*, 8 U.S.P.Q.2d at 1374. That is because "[t]he separation of the liability and damages issues in patent cases is firmly grounded in the case law, undoubtedly due to the complexity of such cases, the lack of any substantial community among the issues, and

the hazard that a lengthy and expensive trial on the damages issue will be erased by reversal of the patent owner's judgment on appeal." *Id.*; *Novopharm Ltd. v. Torpharm, Inc.*, 181 F.R.D. 308, 310 (E.D.N.C. 1998) ("Patent cases are often uniquely amendable to bifurcation because of the complex nature of the damages determination and the extensive discovery that is often necessary to prove the nature and extent of those damages.").

In light of the above, numerous courts in this district and others have found it proper to bifurcate liability issues from damages and willfulness issues in patent cases. *See, e.g., Yamaha*, 59 U.S.P.Q.2d at 1089-90; *Jiles v. S. Cal. Gas Co.*, No. 99-520, 2001 U.S. Dist. LEXIS 26297, at *2-3 (C.D. Cal. Apr. 11, 2001) (ordering "*sua sponte*, that the trial shall be bifurcated so that the issue of liability will be considered before the issue of damages."); *Sage Prods., Inc. v. Devon Indus., Inc.*, No. 93-2403, 1994 U.S. Dist. LEXIS 21634, at *7-9 (C.D. Cal. Jan. 24, 1994) (bifurcating liability from alleged damages and willfulness).[3]  In determining whether to bifurcate a patent case, these courts often consider (1) whether the issues sought to be bifurcated are separate issues, (2) whether bifurcating the issues will conserve judicial resources, (3) whether bifurcating the issues will reduce jury confusion, and (4) the prejudice, if any, to the parties.  *See, e.g.,* Fed. R. Civ. P. 42(b); *Robert Bosch LLC*, 2009 U.S. Dist. LEXIS 76010, at *2-5; *Air-Shields*, 23 U.S.P.Q.2d at 1956-58; *Giro*, 10 U.S.P.Q.2d 1864-65.  As discussed more fully below, each of these considerations weighs heavily in favor of bifurcation in this case.

---

[3] *See also Robert Bosch LLC*, 2009 U.S. Dist. LEXIS 76010, at *1-5 (bifurcating liability from damages and willfulness); *Cherdak*, 396 F. Supp. 2d at 604 (bifurcating liability from damages); *Novopharm*, 181 F.R.D. at 310-12 (bifurcating liability from damages and willfulness); *Scientific-Atlanta, Inc. v. Gen. Instrument Corp.*, 27 U.S.P.Q.2d 1158, 1160 (D. Md. 1993) ("The Court concludes that severing the trial of liability and damages and staying proceedings related to damages and willfulness pending a final determination of liability is most consistent with the considerations set forth in Fed. R. Civ. P. 42(b)."); *Eaton*, 8 U.S.P.Q.2d at 1374-75 (bifurcating liability from damages).

### B. The Alleged Damages And Willfulness Issues Do Not Substantially Overlap With Technical Issues Of Invalidity

As a threshold matter, issues of alleged liability easily can be separated from issues of alleged damages and willfulness. Indeed, many courts have explicitly held that "proof of damages . . . is largely independent of proof of liability" and that "willfulness logically should be tried with damages." *Air-Shields*, 23 U.S.P.Q.2d at 1957; *see also Cherdak*, 396 F. Supp. 2d at 604; *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964) (explaining that "we cannot think of an instance in a patent action where the damage issue is so interwoven with the other issues that it cannot be submitted to the jury independently of the others . . . ."); *Yamaha*, 59 U.S.P.Q.2d at 1090 ("[T]he liability and damages issues are not so interwoven that one cannot be determined independently of the other."); *Lemelson v. Apple Computer Inc.*, 28 U.S.P.Q.2d 1412, 1422 (D. Nev. 1993) ("In patent cases, the issues of liability are usually not intertwined with those of damages.").

Here, "the liability issues will require proof of the specifics of the invention [and] the validity of the patent . . . ." *Avia Group Int',l Inc. v. Nike, Inc.*, 22 U.S.P.Q.2d 1475, 1477 (D. Or. 1991). Specifically, the jurors will be focused on analyzing the seven asserted patent claims of the patent-in-suit and the numerous prior art references that Stryker will rely on to invalidate those claims. The jurors will also be focused on testimony, including technical expert testimony, explaining how all the elements of the asserted claims of the patent-in-suit are found in a plethora of prior art references.

On the other hand, "[c]alculating damages in this case will require consideration of many legal and factual issues not relevant to the determination of liability." *Cherdak*, 396 F. Supp. 2d at 604. For example, "[t]he damages issue is substantially different [from the liability issue]" because instead of focusing on technical evidence and testimony, the damages issue focuses on financial and economic evidence and

testimony, including "proof of sales, costing factors, profit levels, and offsetting costs," among other things. *Avia*, 22 U.S.P.Q.2d at 1477.[4]

Courts likewise have found that "willfulness [also] requires qualitatively and quantitatively different proof than does infringement and, therefore, need not be tried at the same time." *Robert Bosch LLC*, 2009 U.S. Dist. LEXIS 76010, at *4-5 (noting also that "[w]illfulness is an intrusive and inflammatory issue to discover and try."); *Ortho-McNeil v. Teva Pharms. USA*, No. 02-2794, 2003 U.S. Dist. LEXIS 27901, at *12-13 (D.N.J. Jan. 28, 2003) ("[T]he Court is unconvinced at this juncture that the proofs required to demonstrate Defendant's [alleged] willfulness . . . are intertwined with the proofs regarding the validity of the patent."); *cf. Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008) ("[W]e reject Cordis's argument, that under the Seventh Amendment, a new trial on willfulness would require a new trial on infringement."). And indeed, here, TriMed's willfulness claims involve "qualitatively and quantitatively different proof" than the liability issues. *Robert Bosch, Inc.*, 2009 U.S. Dist. LEXIS 76010, at *4-5. For example, TriMed's willfulness allegations will focus on Stryker's subjective intent – something not at issue in determining liability. Moreover, the Federal Circuit has noted that objective prong of the willfulness inquiry is "determined by the record developed in the infringement proceeding." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*).[5]

---

[4] This Court should reject any argument by TriMed that bifurcation is somehow unwarranted because Stryker's obviousness defense may raise overlapping issues regarding commercial success. *See, e.g., Sage*, 1994 U.S. Dist. LEXIS 21634, at *9 (granting motion to bifurcate despite plaintiff's intention to use defendant's "sales figures to prove commercial success . . . ."); *Air-Shields*, 23 U.S.P.Q.2d at 1957; *Avia*, 22 U.S.P.Q.2d at 1477.

[5] Willful infringement is a two-prong inquiry. The first prong requires proof "that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id*. "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id*.

In sum, as in numerous other cases, the damages and willfulness issues here are distinct from – and do not substantially overlap with – the liability issues in this case. Accordingly, this consideration weighs in favor of bifurcation.

### C. Bifurcation Will Promote The Efficient And Economic Resolution Of This Case

One of the main factors supporting bifurcation in this case is that bifurcation has the potential to conserve judicial resources as well as the resources of both the parties. Most importantly, "[i]f no liability is determined, the time and expense of trying damages is avoided." *Eaton*, 8 U.S.P.Q.2d at 1374; *see also Sage*, 1994 U.S. Dist. LEXIS 21634, at *9 (noting that bifurcation of liability from damages will "avoid needless work if [defendant] prevails at the liability stage"); *Novopharm*, 181 F.R.D. at 311; *Lemelson*, 28 U.S.P.Q.2d at 1422 ("A finding in favor of the defendant on the question of liability eliminates any need to have a trial on the issue of damages, saving time and expense."). Given the complexity of the potential damages issues – *e.g.,* the offering of evidence on and the assessment by the jurors of the fifteen reasonable royalty factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) and the potential offering of evidence on and assessment by the jurors of the four lost profits factors[6] – this potential time-savings is immense and warrants bifurcation. *See, e.g., Novopharm*, 181 F.R.D. at 311 (finding damages issues "complex, involved, and time-consuming" in light of the numerous forms of damages claimed and the numerous factors taken into account for each damages' form); *Lemelson*, 28 U.S.P.Q.2d at 1423 n.7 ("[T]he factors which go into the determination of reasonable royalty are both complicated and extensive"); *Eaton*, 8 U.S.P.Q.2d at 1375 (finding damages issues which "may involve reasonable royalties or lost profits . . . are typically complex and involved" and therefore explaining that

---

[6] TriMed has indicated that it intends to seek damages in the form of lost profits at trial. In contravention of the Federal Rules of Civil Procedure, TriMed, however, failed to disclose during discovery the basis for and the amount of these alleged lost profits. (Ex. B, TriMed Resp. to Interrog. No. 11.) Stryker will move at the appropriate time to preclude TriMed from offering such evidence at trial.

"[i]t seems to the court that if these difficult damage considerations can be avoided they ought to be.").

Bifurcating liability from damages also will avoid extensive motion practice and possibly lengthy and expensive damages discovery, including a protracted battle over whether TriMed is allowed to submit any expert discovery on damages. As noted earlier, in light of TriMed's failure to timely submit its expert report on damages, this District Court previously precluded TriMed from offering any such report. (*See* Docket No. 45.) Because TriMed failed to appeal this order during its first or second appeal to the United States Court of Appeals for the Federal Circuit, TriMed is precluded under the law of the case doctrine and the mandate rule from relitigating this issue. *See, e.g., Engel*, 166 F.3d at 1382-84 (issue not raised in prior appeal was "precluded from further adjudication"). Nevertheless, TriMed recently indicated its desire to essentially re-open discovery so that it can file an expert report on the issue of damages. (*See* Ex. C, July 16, 2010 Grossman E-mail.) Because such a request would be improper under the law, Stryker will oppose any such request by TriMed, which in turn will unfortunately lead to additional motion practice related to damages before this Court.

Additionally, as noted above, although TriMed never disclosed during the course of discovery any information regarding its alleged claim for lost profits during discovery, TriMed now claims it may pursue such a damages claim at trial. Again, because such a request by TriMed is improper under the law and prejudicial to Stryker, Stryker will oppose any such request, which in turn will again lead to another round of motion practice before this Court. Such motion practice, along with other damages motion practice that is likely to arise (*e.g., Daubert* motions) could be avoided, and eventually rendered moot, if this Court granted Stryker's request for bifurcation and the patent-in-suit were held invalid.[7] *See Robert Bosch LLC*, 2009 U.S. Dist. LEXIS

---

[7] Should the Court grant TriMed's untimely request to submit an expert report on damages, Stryker will have to expend extensive resources. For example, though
(CONTINUED)

76010, at *2 ("[I]n my experience, discovery disputes related to document production on damages and the *Daubert* motion practice related to damages experts are a drain on scarce judicial resources."); *Novopharm*, 181 F.R.D. at 310-11; *Scientific-Atlanta*, 27 U.S.P.Q.2d at 1160 (holding that the interests of "expedition and economy" were served by bifurcation in part because "discovery and trial on damages, which may be unnecessary, could be avoided under [defendant's] proposal."); *Russell William, Ltd. v. ABC Display & Supply, Inc.*, No. 88-265, 1991 U.S. Dist. LEXIS 3814, at *2-3 (E.D.N.Y. Mar. 26, 1991) ("In view of the full discovery necessary to litigate the issue of damages, the court finds that the economy and efficiency will be best served by trying the liability issue first and reaching the question of damages if there is a finding of liability.").

Because bifurcation has the potential to conserve the resources and time of both the Court and the parties, bifurcation is warranted under Federal Rule of Civil Procedure 42(b).[8]

### D.   Bifurcation Will Reduce Juror Confusion

By their very nature, patent trials are complex and time-consuming. In the trial of this case, for example, to determine liability, the jurors will be tasked with understanding patent law and the patentability standards, including the appropriate standards for assessing whether the multitude of prior art references relied on by Stryker renders the asserted claims of the patent-in-suit invalid as anticipated under 35

---

(CONTINUED) Stryker already submitted its expert report on damages, its expert will have to submit a new report addressing any issues now raised by TriMed. Again, this unnecessary burden could be avoided should the Court grant Stryker's bifurcation request.

[8] Even if the jury were to find liability, the resources and time of the Court and the parties might still be conserved because "a jury finding on liability may encourage settlement of damages issues and thereby eliminate the need for a second trial." *Avia*, 22 U.S.P.Q.2d at 1477; *see also Robert Bosch LLC*, 2009 U.S. Dist. LEXIS 76010, at *3-4 ("[B]ifurcation promotes the just and efficient resolution of what damages, if any, should be awarded by: (1) giving the parties – those with the most expertise in the market – the first opportunity to translate the Federal Circuit's final legal decision on liability into practical commercial consequences . . . ."); *Lemelson*, 28 U.S.P.Q.2d at 1424 n.13.

U.S.C. § 102 or obvious under 35 U.S.C. § 103. This will require the jurors to analyze the asserted claims of the patent-in-suit along with the detailed disclosures of the numerous aforementioned prior art references. *See Avia*, 22 U.S.P.Q.2d at 1477. In doing so, the jurors will have to consider and assess the testimony of fact as well as expert witnesses.

A damages inquiry will require the jurors to assess extensive *additional* issues and materials. For example, analyzing damages will require the jurors to understand and evaluate no fewer than fifteen complex factors that go into determining the appropriate reasonable royalty damages. *See Yamaha*, 59 U.S.P.Q.2d at 1089-90 ("A determination of 'reasonable royalty' requires evidence on 15 different factors, each of which is complex."); *Novopharm*, 181 F.R.D. at 311; *Air-Shields*, 23 U.S.P.Q.2d at 1956-57 (finding damages issues complex where multiple factors needed to be evaluated). Moreover, if this Court allows TriMed to proceed with its lost profits claim, the jurors will also be tasked with understanding and evaluating an equally complex legal analysis. *See Novopharm*, 181 F.R.D at 311. Again, these damages issues will require both fact and expert testimony, largely from different witnesses and largely related to vastly different issues than the testimony related to liability. *See Avia*, 22 U.S.P.Q.2d at 1477. They will also require the evaluation of numerous complicated economic issues, along with complex financial documents.

In situations such as these, courts have found that bifurcation is necessary to ensure that the jurors understand the complex issues that they are charged with deciding. Indeed, as one court has noted:

> Aside from the burden imposed on the court, the burden imposed on a jury in a patent trial is extraordinary. More specifically, juries are tasked with resolving complex technical issues regarding infringement and invalidity, many times with respect to multiple patents and/or multiple prior art references. Absent bifurcation, jurors then are expected to understand the commercial complexities of the relevant market (or, even more impenetrable, the commercial complexities of the hypothetical market) in order to determine the economic consequences of their liability decisions.

*Robert Bosch LLC*, 2009 U.S. Dist. LEXIS 76010, at *3; *see also Ciena*, 210 F.R.D. at 521 ("[B]ifurcation might enhance jury decision making in two ways: (1) by presenting evidence in a manner that is easier for the jurors to understand, and (2) by limiting the number of legal issues the jury must address at any particular time."); *Yamaha*, 59 U.S.P.Q.2d at 1089-90 (granting motion to bifurcate liability and damages in part because "[a] determination of 'reasonable royalty' requires evidence on 15 different factors, each of which is complex."); *Sage*, 1994 U.S. Dist. LEXIS 21634, at *9 (noting that bifurcation of liability from damages "will limit jury confusion"); *Air-Shields*, 23 U.S.P.Q.2d at 1957 ("Separate trials will foster a clear presentation of this complicated case to the jury."); *Cherdak*, 396 F. Supp. 2d at 604 (granting motion to bifurcate in part because the "determination of damages is considerably more than 'a simple math problem'").

Here, as in the numerous other cases cited above, "severing the issue of liability from damages" will reduce juror confusion by permitting jurors to focus on technical issues of invalidity "without the inevitable distraction caused by the presentation of extraneous evidence relating to accounting procedures, costs, marketing and sales of product which may or may not be found to infringe, and proof as to what may be considered a reasonable royalty rate." *Lemelson*, 28 U.S.P.Q.2d at 1422; *see also Robert Bosch LLC*, 2009 U.S. Dist. LEXIS 76010, at *3; *Ciena*, 210 F.R.D. at 521 ("[T]he Court has determined that the use of alternate trial procedures could assist juries in obtaining a better understanding of the legal issues they are called upon to decide."); *Sage*, 1994 U.S. Dist. LEXIS 21634, at *9 (finding bifurcation appropriate in part because "bifurcation will limit jury confusion"); *Air-Shields*, 23 U.S.P.Q.2d at 1957 (holding that "[s]eparate trials [on liability and damages] will foster a clear presentation of this complicated case to the jury."). Accordingly, bifurcation under Federal Rule of Civil Procedure 42(b) is appropriate on this basis as well.

### E. Bifurcation Will Reduce The Prejudice To The Parties

Bifurcation is also warranted in order to reduce any prejudice to the parties. *See* Fed. R. Civ. P. 42(b). ***First***, bifurcation will reduce the prejudice to both parties because, as explained above, it will allow the jurors to have a better understanding of the issues they are deciding. ***Second***, bifurcation will avoid any potential prejudice to Stryker by separating out TriMed's allegations of willful infringement. Because alleged willful infringement is a separate inquiry from liability (*see supra* Section III.B), jurors do not need to hear evidence related to alleged willfulness to decide issues relating to liability, and specifically in this case, invalidity of the asserted claims of the patent-in-suit. To the contrary, allowing such evidence in will only serve to cloud the jurors' judgment of the merits of Stryker's invalidity defenses. *See Robert Bosch LLC*, 2009 U.S. Dist. LEXIS 76010, at *5 n.3 ("Willfulness is an intrusive and inflammatory issue to discover and try."); *Ortho-McNeil*, 2003 U.S. Dist. LEXIS 27901, at *9-10. Accordingly, to eliminate any prejudice to Stryker during trial, bifurcation is appropriate. *See* Fed. R. Civ. P. 42(b).

## IV. CONCLUSION

To conserve the resources and time of both the Court and the parties, to facilitate the jurors' understanding of the complex legal issues to be decided, and to eliminate any prejudice to the parties, Stryker respectfully requests that all issues relating to alleged damages and willfulness be addressed and tried, if necessary, separately and after a trial as to liability for patent validity/invalidity.

Respectfully submitted,

Dated: July 30, 2010

*/s/ Tamara M. Rowles*
Tamara M. Rowles (SBN 228940)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, California 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080

William Ross Overend (SBN 180209)
REED SMITH LLP

| | |
|---|---|
| 1 | 101 Second Street, Suite 1800 |
| 2 | San Francisco, California  94105-3659<br>Telephone:  (415) 543-8700 |
| 3 | Facsimile:   (415) 391-8269 |
| 4 | Gregory J. Vogler (*pro hac vice*) |
| 5 | Robert A. Surrette (*pro hac vice*)<br>McANDREWS, HELD & MALLOY, LTD. |
| 6 | 500 West Madison Street, 34th Floor<br>Chicago, Illinois 60661 |
| 7 | Telephone:  (312) 775-8000 |
| 8 | Facsimile:   (312) 775-8100 |
| 9 | Attorneys for Defendant<br>STRYKER CORP. |