Tamara M. Rowles (SBN 228940)
Email: trowles@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, California  90071-1514
Telephone:  (213) 457-8000
Facsimile:   (213) 457-8080

William Ross Overend (SBN 180209)
Email: woverend@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, California  94105-3659
Telephone:  (415) 543-8700
Facsimile:   (415) 391-8269

Gregory J. Vogler (*pro hac vice*)
Email: gvogler@mcandrews-ip.com
Robert A. Surrette (*pro hac vice*)
Email: bsurrette@mcandrews-ip.com
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
Telephone:  (312) 775-8000
Facsimile:   (312) 775-8100

Attorneys for Defendant
STRYKER CORPORATION

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| TRIMED, INC. a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> STRYKER CORP, a Michigan corporation, <br><br> Defendant. | CASE NO. CV-06-1918-SVW-SH <br><br> **REPLY IN SUPPORT OF DEFENDANT STRYKER CORPORATION'S MOTION TO BIFURCATE LIABILITY ISSUES FROM DAMAGES AND WILLFULNESS ISSUES** <br><br> Date: August 30, 2010 <br> Time: 1:30 p.m. <br> Hon. Stephen V. Wilson |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ………………………………………………..……… ii

I.   INTRODUCTION ................................................................................................ 1

II.  THE ALLEGED OVERLAP IN EVIDENCE CITED BY TRIMED
     DOES NOT JUSTIFY DENIAL OF BIFURCATION .......................................... 2

    A.   A Reasonable Royalty Determination Does <u>Not</u> Require A
     Detailed Analysis Of The Prior Art, The Patent Claims And The
     File History ................................................................................................ 4

    B.   Evidence Related To Secondary Considerations Is Largely
     Unrelated To Damages Evidence ................................................................ 6

    C.   The Issue Of Willful Infringement Requires Different Proofs Than
     The Issue Of Patent Invalidity .................................................................... 8

III. TRIMED IGNORES THE BENEFITS OF BIFURCATION ............................... 9

    A.   Bifurcation Will Facilitate Juror Comprehension Of The Complex
     Issues Raised In This Case ......................................................................... 9

    B.   Bifurcation Will Likely Eliminate A Damages Trial As Well As
     Extensive Damages Motion Practice ........................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air-Shields Inc. v. BOC Group*,
 23 U.S.P.Q.2d 1955 (D. Md. 1992) ................................................................. 6

*Amylin Pharms. Inc. v. Univ. of Minnesota*,
 45 U.S.P.Q.2d 1949 (S.D. Cal. 1998) ......................................................... 4, 11

*Anderson's-Black Rock, Inc. v. Pavement Salavage Co.*,
 396 U.S. 57 (1969) ........................................................................................... 6

*Avia Group Int'l Inc. v. Nike Inc.*,
 22 U.S.P.Q.2d 1475 (D. Or. 1991) ........................................................... 3, 7, 9

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
 No. 96-1718, 2001 WL 699856 (S.D. Ind. May 31, 2001) ......................... 7, 8

*Ciena Corp. v. Corvis Corp.*,
 210 F.R.D. 519 (D. Del. 2002) ........................................................................ 9

*Cohesive Techs., Inc. v. Waters Corp.*,
 543 F.3d 1351 (Fed. Cir. 2008) ....................................................................... 9

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
 318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................ 4

*Graham v. John Deere Co.*,
 383 U.S. 1 (1966) ............................................................................................. 6

*Lemelson v. Apple Computer Inc.*,
 28 U.S.P.Q.2d 1412 (D. Nev. 1993) ...................................................... 7, 8, 12

*Lucent Techs., Inc. v. Gateway, Inc.*,
 580 F.3d 1301 (Fed. Cir. 2009) ....................................................................... 7

*Markman v. Westview Instruments, Inc.*,
 517 U.S. 370 (1996) ......................................................................................... 3

*Ortho-McNeil v. Teva Pharms. USA*,
 No. 02-2794, 2003 U.S. Dist. LEXIS 27901 (D.N.J. Jan. 28, 2003) ......... 9, 11

*Pfizer Inc. v. Novopharm Ltd.*,
 57 U.S.P.Q.2d 1442 (N.D. Ill. 2000) ............................................................. 11

*Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*,
 180 F.R.D. 254 (D.N.J. 1997) ......................................................................... 8

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
 No. 08-542, 2009 U.S. Dist. LEXIS 76010 (D. Del. Aug. 26, 2009) ..... 3, 9, 12

*Robotic Vision Sys., Inc. v. View Eng'g, Inc.*,
   No. 96-2288, 1997 WL 809679 (C.D. Cal. Nov. 6, 1997) .........................................8

*Sage Prods., Inc. v. Devon Indus., Inc.*,
   No. 93-2403, 1994 U.S. Dist. LEXIS 21634 (C.D. Cal. Jan. 24, 1994) ................7, 9

*Schering Corp. v. Geneva Pharms., Inc.*,
   339 F.3d 1373 (Fed. Cir. 2003) ...............................................................................1

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
   431 F. Supp. 2d 834 (N.D. Ill. 2006) ...................................................................7, 8

*White Chem. Corp. v. Walsh Chem. Corp.*,
   116 F.R.D. 580 (W.D.N.C. 1987) .........................................................................6, 8

*Willemijn v. Apollo Computer Inc.*,
   707 F. Supp. 1429 (D. Del. 1989) ............................................................................7

*Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) ..............................................................................11

*Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier, Inc.*,
   59 U.S.P.Q.2d 1088 (C.D. Cal. 2001) .....................................................................3

**Statutes**

35 U.S.C. § 102 .................................................................................6, 1035 U.S.C. § 102

35 U.S.C. § 103 ..................................................................................................6, 10

## I.     INTRODUCTION

At the August 2, 2010 status conference, Stryker indicated that it will concede infringement in view of the Federal Circuit's broad claim construction. That broad claim construction also means the asserted patent claims cover the prior art such that the claims are invalid. "[T]hat which would literally infringe if later in time anticipates if earlier." *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003). Because invalidity is the **only** liability issue here, there is no persuasive reason to oppose bifurcation. Any allegation of significant intertwinement of issues between liability and damages/willfulness ceased to exist after infringement was conceded.

TriMed nevertheless contends that "virtually all" of the liability issues and evidence are the same as the damages/willfulness issues and evidence, and that bifurcation will result in "two identical trials." But, a slight overlap hardly amounts to "identical" trials or even "substantial" overlap. Indeed, TriMed **fails** to identify the witnesses, the scope of their testimony, and the documents used with each witness that would cause an "overlap" between the two trials. That is because as with other patent cases where bifurcation makes sense, most of the technical invalidity issues are different from the economic, financial and other issues raised by damages/willfulness.

Having misrepresented the alleged overlap, TriMed then fails address the compelling reasons *favoring* bifurcation raised by Stryker. These include:

- Bifurcation will conserve resources because motion practice and trial on damages/willfulness is obviated if no liability is found.
- Bifurcation will alleviate juror confusion by allowing jurors to focus on technical liability issues before addressing the separate and complex financial, economic and other issues associated with damages/willfulness.
- Bifurcation will reduce the prejudice to Stryker caused by TriMed's insistence on clouding the jurors' judgment of the merits of Stryker's invalidity defenses with alleged willful infringement evidence.

The bottom line is that—especially with infringement no longer at issue— bifurcation provides a practical, efficient way for the Court and jury to separate out technical liability issues from the vastly different issues of damages/willfulness. As TriMed has no credible basis to oppose Stryker's motion, it should be granted.

## II. THE ALLEGED OVERLAP IN EVIDENCE CITED BY TRIMED DOES NOT JUSTIFY DENIAL OF BIFURCATION

Although TriMed suggests that the absence of the infringement issue weighs against bifurcation, the opposite is true. The fact that Stryker will concede infringement means there will be less potential overlap between the liability trial and the damages/willfulness trial. By contrast, in many cases where bifurcation is not granted, infringement issues still exist that cause more extensive overlap between the two trials. Here, any overlap is minimal at best. And because invalidity is the only liability issue remaining, bifurcation provides a practical means for the jury to potentially dispose of the case based on the technical issues without having to wade through the financial, economic and other evidence relating to damages/willfulness.

As illustrated below, an invalidity analysis will require a detailed comparison of the patent claims with each piece of prior art. When this prior art is considered, it is clear that TriMed's patent claims are invalid. For example, over ten years before TriMed filed its patent application, a product brochure disclosed TriMed's "invention":



Likewise, over three years before TriMed filed its patent application, another patent application was filed which discloses all the elements of the asserted claims:



As such, invalidity will involve evidence focused largely on the disclosures of the patent-in-suit and numerous prior art references—e.g., **technical evidence**. (Opening Br. at 6.) An invalidity trial will also focus on additional technical evidence, such as the patent-in-suit's file history.

In contrast, a trial on damages and willfulness, if such a trial is even necessary in light of the strength of the prior art references, will focus on **financial and economic evidence**, as well as the subjective intent of Stryker. (*Id.* at 6-7.) Because this evidence differs fundamentally from the technical invalidity evidence, courts routinely find that damages and willfulness can, and should, be tried separately from the issue of liability. *See, e.g., Robert Bosch LLC v. Pylon Mfg. Corp.*, No. 08-542, 2009 U.S. Dist. LEXIS 76010, at *2-5 (D. Del. Aug. 26, 2009); *Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier, Inc.*, 59 U.S.P.Q.2d 1088, 1090 (C.D. Cal. 2001); *Avia Group Int'l Inc. v. Nike Inc.*, 22 U.S.P.Q.2d 1475, 1477 (D. Or. 1991).[1] TriMed's arguments to the contrary are fundamentally flawed and misrepresent the facts of this case.

---

[1] TriMed's attempt to discount Stryker's cited cases because they predate *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) is flawed. (TriMed Br. at 11.) None of Stryker's "pre-*Markman*" cases mentions claim construction as a factor favoring bifurcation. Moreover, that bifurcation is prevalent post-*Markman* indicates that *Markman* did not affect the bifurcation analysis. *See, e.g., Robert Bosch*, 2009 U.S. Dist. LEXIS 76010, at *2 ("[B]ifrcuation is appropriate, if not necessary, in all but

(CONTINUED)

### A. A Reasonable Royalty Determination Does **Not** Require A Detailed Analysis Of The Prior Art, The Patent Claims And The File History

A reasonable royalty calculation involves analysis of fifteen complex factors:

1. The royalties received from licensing the patent-in-suit.
2. The rates paid on licenses for comparable patents.
3. The nature and scope of the license (e.g., exclusive, non-exclusive).
4. The licensor's established licensing policy and marketing program.
5. The commercial relationship between the licensor and the licensee.
6. The effect of selling the patented product on sales of other products.
7. The duration of the patent and the term of the license.
8. The established profitability/popularity of the patented product.
9. The utility and advantages of the patented product over old devices.
10. The nature of the patented product and its benefits.
11. The extent the infringer used the invention and the value of the use.
12. The customary portion of profit/selling price paid to use the invention.
13. The portion of the realizable profits credited to the invention as distinguished from, for example, non-patented elements.
14. The opinion testimony of qualified experts.
15. The amount a licensor and a licensee would have agreed to if both had been reasonable and voluntarily trying to reach an agreement.

*See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). While two factors require analysis of "[t]he utility and advantages" of the invention over old devices and "[t]he nature of the patented invention," **the remaining thirteen factors require analysis of financial and economic evidence**, e.g., customary practices in the relevant market, relevant license agreements, profitability, and expert testimony—none of which relate to invalidity. *Id.*

Thus, the unquestionable focus of the damages analysis, and specifically the reasonable royalty analysis, is financial and economic evidence. Despite this, TriMed attempts to persuade this Court that both trials would "have to spend significant amounts of time" analyzing prior art because "[o]ne of the key components in

---

(CONTINUED) exceptional patent cases."); *Amylin Pharms. Inc. v. Univ. of Minnesota*, 45 U.S.P.Q.2d 1949 (S.D. Cal. 1998). And finally, TriMed failed to point to a single case adopting TriMed's argument.

calculating a reasonable royalty is for the jury to determine the utility and advantages of the patent over the prior art." (TriMed Br. at 6.) But, TriMed's contention that analysis of *one of fifteen* of the reasonable royalty issues amounts to the issues being "entirely duplicated" in "identical trials" defies logic. Moreover, the conclusion TriMed draws—that a damages trial will require jurors "to spend significant amounts of time understanding the patented invention, the state of the art . . ., all of the prior art in the field, and the differences between the prior art and the patented invention"—is incorrect. (*Id*.) These issues are minor, as exemplified by the fact that neither party previously contended that such an analysis is crucial to calculating a reasonable royalty. For example, TriMed did not specifically list "utility and advantages" of the "invention" over the prior art in its damages interrogatory response. (Ex. B at Interrog. No. 11.)[2] Likewise, Stryker's damages expert—the only damages expert in this case—did not focus on such technical issues. (TriMed Ex. C at 10-12.) Rather, he focused on financial/economic issues, e.g., analysis of comparable licenses. (*Id*.)[3]

TriMed **never explains** why such a limited inquiry into the "utility and advantages" of the alleged invention would require complete duplication of the invalidity trial. For example, TriMed never explains why jurors during the damages trial would need to hear testimony from Stryker's technical expert or any other witness comparing each patent claim to the prior art before they could determine if the alleged invention had some "utility" over the prior art. Moreover, TriMed fails to point to a single case denying bifurcation because the reasonable royalty analysis might require jurors to consider the "utility and advantages" of invention over "old . . . devices." The reason it does not is simple: during a damages trial, jurors merely might consider if the invention offers "utility and advantages" over the prior art—a separate inquiry

---

[2] Exhibits A through C were filed with Stryker's Opening Brief.

[3] TriMed has not asserted that the financial and economic issues raised by a lost profits analysis would overlap with the technical invalidity issues. As such, TriMed has conceded that the invalidity and lost profits analyses are separate. In any event, TriMed should be precluded from seeking lost profits. (*See* Opening Br. at 3 & 9-10.)

that is narrower than analyzing prior art to determine if every element of the claimed invention is disclosed (as is necessary for invalidity). *See Air-Shields Inc. v. BOC Group*, 23 U.S.P.Q.2d 1955, 1956-57 (D. Md. 1992) (bifurcating despite argument "that some evidence of the patent claims may be needed in the damages phase" where such evidence could be introduced "through limited testimony"); *White Chem. Corp. v. Walsh Chem. Corp.*, 116 F.R.D. 580, 582 (W.D.N.C. 1987) (bifurcating despite argument that some "technical proofs" might be repeated in damages trial).

### B. Evidence Related To Secondary Considerations Is Largely Unrelated To Damages Evidence

The invalidity trial involves issues of anticipation under 35 U.S.C. § 102 and obviousness under 35 U.S.C. § 103. Notably, TriMed ignores invalidity based on anticipation. By its silence, TriMed acknowledges, as it must, that there is **no overlap** between invalidity based upon anticipation and damages/willfulness. That is because anticipation focuses exclusively on the prior art's technical disclosures. As such, half of Stryker's invalidity case has nothing to do with damages/willfulness issues.

Even as to obviousness, the potential overlap is minimal. Like anticipation, obviousness requires jurors to focus on **technical evidence**. Specifically, they must determine and focus on the technical issues of "the scope and content of the prior art," "differences between the prior art and the claims at issue," and "the level of ordinary skill in the pertinent art." *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). The jurors can also look at "secondary considerations" such as commercial success, copying, a long-felt but unmet need, failure of others, or unexpected results. *See id*. at 17. Focusing solely on this last prong, TriMed argues that an analysis of "secondary considerations" will require the jurors to consider the same evidence as a reasonable royalty analysis. TriMed's arguments again overstate any "overlap" and improperly elevate a minor "secondary" component of the obviousness analysis to the forefront.[4,5]

---

[4] Secondary considerations are insufficient to overcome a strong case of obviousness because secondary considerations "without invention will not make patentability." *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 61 (1969).

***First***, TriMed's argument that commercial success relates to secondary considerations and a reasonable royalty is misplaced. As courts have explained:

> The question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the claimed invention is, broadly speaking, an accepted product and a big seller.

*Avia*, 22 U.S.P.Q.2d at 1477 (quoting *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1116 (D. Del. 1984)); *see also Sage Prods., Inc. v. Devon Indus., Inc.*, No. 93-2403, 1994 U.S. Dist. LEXIS 21634, at *9 (C.D. Cal. Jan. 24, 1994) (bifurcating despite use of "sales figures to prove commercial success"); *Lemelson v. Apple Computer Inc.*, 28 U.S.P.Q.2d 1412, 1422-23 (D. Nev. 1993); (*see also* Opening Br. at 7 n.4.).

Against the backdrop of this well-established principle, TriMed cannot provide a detailed analysis regarding the "commercial success" evidence of nonobviousness that will "significantly" overlap with damages evidence. TriMed fails to identify which witnesses will have to testify twice and how the testimony presented during the invalidity and damages trials would be duplicative. This fundamental failure in TriMed's analysis underscores the reality that TriMed "need not dig into damage evidence in order to show commercial success." *Lemelson*, 28 U.S.P.Q.2d at 1422-23.

***Second***, TriMed's argument that the reasonable royalty inquiry into "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use" overlaps with the secondary considerations inquiry is a red-herring. As TriMed's cited case law states, this factor focuses on whether "an invention [is] used frequently." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009). Evidence as to whether "an invention [is] used frequently" does not overlap with evidence of secondary considerations (e.g., alleged copying). Indeed, again

---

(CONTINUED)
[5] TriMed's cases are distinguishable. Both *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834 (N.D. Ill. 2006) and *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, No. 96-1718, 2001 WL 699856 (S.D. Ind. May 31, 2001) involved issues of infringement (not at issue here). And, *Willemijn v. Apollo Computer Inc.*, 707 F. Supp. 1429 (D. Del. 1989) involved a bench trial, and thus no risk of juror confusion.

TriMed fails to outline what specific witnesses and testimony will overlap if invalidity is tried separately from damages. And, despite TriMed's conclusory assertions, the obviousness determination does not collapse into a review of a handful of documents TriMed cites as evidence of "secondary considerations," but rather is a broader determination involving issues/evidence distinct from damages.[6]

### C. The Issue Of Willful Infringement Requires Different Proofs Than The Issue Of Patent Invalidity

TriMed also contends that there is "substantial overlap" between obviousness and willfulness simply because willfulness "is determined from the 'totality of the evidence.'" (TriMed Br. at 8-9.) But in support of this vague statement, TriMed again **fails to identify a single witness** that would have to testify twice. (TriMed Br. at 8-9.) This omission shows the lack of any "substantial overlap."[7] And again, TriMed concedes that anticipation and willfulness do not overlap.

Moreover, TriMed only identifies one issue, alleged copying, which might be "relevant" to obviousness and willfulness. But, because copying is one of many factors that can be considered in a willfulness analysis, such an "overlap" is not "significant," much less sufficient to warrant denying bifurcation. *See Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 258 n.3 (D.N.J. 1997); *White*, 116 F.R.D. at 582 (bifurcating despite argument that "copying" evidence is relevant to invalidity and willfulness); *Lemelson*, 28 U.S.P.Q.2d at 1423. Rather, as invalidity and willfulness are separate inquiries, bifurcation is warranted. *Robert*

---

[6] Stryker disagrees with TriMed's use of cropped, out-of-context quotes to cobble together a story about "copying." For example, the alleged copying document does not reference copying the "inventive" feature of the patent-in-suit—the interaction between the pin and plate hole. (TriMed Ex. H.) Though Stryker disputes many more of TriMed's assertions, because these issues are not germane to whether bifurcation is appropriate, Stryker will not burden this Court with a further response at this time.

[7] TriMed's cases are inapposite. In both *Cardiac* and *Trading Techs.*, infringement was at issue. *See, e.g., Cardiac*, 2001 WL 699856, at *3 (noting "the close factual and evidentiary relationship between infringement and willfulness"). And, *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, No. 96-2288, 1997 WL 809679 (C.D. Cal. Nov. 6, 1997) involved a bench trial, thus avoiding juror confusion. *Id*. at *3 ("Surely the Court will be able to properly segregate the issue of willfulness from issues of liability.").

*Bosch*, 2009 U.S. Dist. LEXIS 76010, at *4-5; *Ortho-McNeil v. Teva Pharms. USA*, No. 02-2794, 2003 U.S. Dist. LEXIS 27901, at *12-13 (D.N.J. Jan. 28, 2003); *Avia*, 22 U.S.P.Q.2d at 1477; *B. Braun Med. Inc. v. Abbott Labs.*, No. 93-3883, 1994 U.S. Dist. LEXIS 12104, at *3 (E.D. Pa. Aug. 24, 1994) ("[W]illfulness logically should be tried with damages.").[8]

### III. TRIMED IGNORES THE BENEFITS OF BIFURCATION

As outlined in Stryker's Opening Brief, bifurcation of this case has many benefits. (Opening Br. at 4-5 & 8-13.)  These benefits (ignored by TriMed) include:

- "If no liability is determined, the time and expense of trying damages [and willfulness] is avoided." (*Id*. at 8.)
- Avoidance of extensive damages/willfulness motion practice. (*Id*. at 9-10.)
- Reducing juror confusion by permitting jurors to focus on technical invalidity issues first without the distraction caused by extraneous evidence of accounting procedures, costs, marketing and sales of a product which may not infringe, and proof as to a reasonable royalty. (*Id*. at 12.)
- Reducing prejudice to Stryker. (*Id*. at 13.)

#### A. Bifurcation Will Facilitate Juror Comprehension Of The Complex Issues Raised In This Case

One of the many benefits of bifurcation is "limit[ing] jury confusion" by, for example, "limiting the number of legal issues the jury must address at any particular time." *Sage*, 1994 U.S. Dist. LEXIS 21634, at *9; *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002).  This benefit is particularly significant in patent cases where the jurors will be tasked with (1) understanding patentability standards and analyzing multiple prior art references to determine liability and (2) understanding and evaluating at least the fifteen complex reasonable royalty factors in light of the complex economic and financial evidence and testimony. (Opening Br. at 10-12.)  In an attempt to discount these benefits, TriMed seeks to recasts this case as

---

[8] Stryker disputes that TriMed can prove willful infringement.  The fact that this Court granted Stryker's summary judgment motions of noninfringement and invalidity (albeit reversed by the Federal Circuit) shows that reasonable minds could and did differ regarding the merits of the case.  This strongly supports a finding of no willfulness. *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 (Fed. Cir. 2008).

"significantly narrowed." (TriMed Br. at 2-3.)  TriMed's argument is premised on a fundamental misunderstanding of this case and fails for at least three reasons.

*First*, TriMed misrepresents that invalidity will require only obviousness to be analyzed.  As Stryker stated in its Opening Brief (p. 10-11), this case raises invalidity under 35 U.S.C. § 102 (anticipation) and under 35 U.S.C. § 103 (obviousness).  Thus, TriMed's contention that the invalidity trial would involve one issue is incorrect.  And, as TriMed concedes, anticipation has no overlap with damages/willfulness.

*Second*, TriMed's claim that Stryker's obviousness argument has been "narrowed" to "three pieces of prior art," likewise has no basis in fact. (TriMed Br. at 3.)  TriMed's implicit suggestion that the Federal Circuit "narrowed" Stryker's defenses to three pieces of prior art is not supported by the record. (*Id*.)  The Federal Circuit simply held that the invalidity issue involved questions of fact.  Indeed, as TriMed is well aware, Stryker's defenses are based on many prior art references. (*See infra* pages 2-3.)  For example, Stryker's recently filed reexamination request for reexamination with the Patent Office raised nine prior art references.  (*See* Docket No. 133-6 at Ex. F.)  Thus, contrary to TriMed's representation, the jurors in this case will be asked to understand and evaluate numerous prior art references.

*Third*, TriMed's contention that Stryker's previous statements regarding the patent-in-suit somehow transform this case into one that is "not complicated" and "straightforward" is misplaced. (TriMed Br. at 2.)  Stryker previously stated that the subject matter of the patent-in-suit was not complex because it involved the combination of three well-known elements, namely a plate with holes, screws and pins. (*See, e.g.,* Docket No. 32 at 1.)  That the underlying technology may not be complex, however, does not mean that the invalidity issues are straightforward, especially to a layperson juror.  To determine liability, the jurors will be tasked with understanding patentability standards and with evaluating the asserted claims along with the detailed disclosures of many prior art references. (Opening Br. at 10-11.)  A damages inquiry, conversely, will require jurors to evaluate extensive additional evidence (such as

testimony of Stryker's expert witness) in light of at least the fifteen complex reasonable royalty factors. (*Id*. at 11-12.) Because evaluating the damages evidence is a daunting, time-consuming task that could be avoided if no liability is found, courts often bifurcate liability from damages/willfulness. Indeed, contrary to TriMed's contention, courts often do so even when the technology is not "complex" or liability hinges on alleged infringement of a single patent. *See, e.g., Ortho-McNeil*, 2003 U.S. Dist. LEXIS 27901, at *8-10 (bifurcating even though "the validity of the patent at issue is not complex"); *Pfizer Inc. v. Novopharm Ltd.*, 57 U.S.P.Q.2d 1442, 1445 (N.D. Ill. 2000); *Amylin*, 45 U.S.P.Q.2d at 1951 (bifurcating where "liability portion of the case turns on whether the plaintiff's product infringes on a single claim").

### B. Bifurcation Will Likely Eliminate A Damages Trial As Well As Extensive Damages Motion Practice

Bifurcation is also beneficial because it can obviate the need for unnecessary motion practice and trial. (Opening Br. at 8-10.) Unable to rebut this common sense proposition, TriMed misdirects this Court by disingenuously asserting that bifurcation is unnecessary because "**no** motion practice awaits damages." (TriMed Br. at 8.) The sole basis for TriMed's argument is its eleventh-hour concession that it has no basis to seek leave to file a damages expert report and reopen damages discovery.[9] (*Id*.)[10] But, as outlined in Stryker's Opening Brief (p. 3 & 9-10), outstanding damages motion practice is not limited to TriMed's untimely request to reopen damages discovery. For example, though TriMed never disclosed during discovery any information regarding its lost profits claim, TriMed has indicated its intent to pursue such damages at trial.

---

[9] Before Stryker filed its motion, TriMed asked if Stryker would "allow TriMed to serve an expert report on damages?" and "[i]f not, will you be available to meet and confer regarding this issue . . . ?" (Ex. C, 7/16/10 email.) Thus, TriMed's implication that Stryker misinformed the Court is incorrect. Stryker learned that TriMed would not to pursue expert discovery when TriMed filed its Opposition.

[10] TriMed's decision to forego damages expert testimony makes it unlikely that it will be able to prove its exaggerated damages claim. *See Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1318-22 (Fed. Cir. 2010) (granting new trial where no expert opinion offered and testimony from plaintiff's president speculative).

(*Id.*)  TriMed's pursuit of such damages after violating its discovery obligations is improper and prejudices Stryker.  As such, the parties and the Court will have to spend time and resources briefing and deciding this issue.  Numerous motions *in limine* also will need to be resolved before any damages trial.  In fact, **two-thirds** of TriMed's previously filed motions *in limine* related to damages.[11]  (*See* Docket Nos. 69-71.)

Since bifurcation has the potential to moot damages/willfulness motion practice and obviate the need for a damages/willfulness trial altogether, this Court should bifurcate the invalidity issues from the damages and willfulness issues.  *See Robert Bosch*, 2009 U.S. Dist. LEXIS 76010, at *2-5; *Lemelson*, 28 U.S.P.Q.2d at 1422.

Respectfully submitted,

Dated:  August 16, 2010

/S/ – Name

Tamara M. Rowles (SBN 228940)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, California  90071-1514
Telephone:  (213) 457-8000
Facsimile:   (213) 457-8080

William Ross Overend (SBN 180209)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, California  94105-3659
Telephone:  (415) 543-8700
Facsimile:   (415) 391-8269

Gregory J. Vogler (*pro hac vice*)
Robert A. Surrette (*pro hac vice*)
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
Telephone:  (312) 775-8000
Facsimile:   (312) 775-8100

Attorneys for Defendant
STRYKER CORP.

---

[11] TriMed filed the motions before dismissal of this case due to the grant of summary judgment noninfringement. (Docket Nos. 69-71.)  Briefing on the motions was not completed.  Stryker assumes TriMed will re-file the motions before any damages trial.

# PROOF OF SERVICE

I Arleen A. Swenson declare:

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. I am employed in the office of a member of the bar of this court at whose direction the service was made. My business address is REED SMITH LLP, 355 South Grand Avenue, Suite 2900, Los Angeles, CA 90071-1514. On August 16, 2010, I served the following document(s) by the method indicated below on the attached service list:

**REPLY IN SUPPORT OF DEFENDANT STRYKER CORPORATION'S MOTION TO BIFURCATE LIABILITY ISSUES FROM DAMAGES AND WILLFULNESS ISSUES**

☒ per attached list — **BY CM/ECF ELECTRONIC DELIVERY:** In accordance with the registered case participants and in accordance with the procedures set forth at the Court's website www.ecf.cacd.uscourts.gov

☐ by transmitting via facsimile on this date from fax number +1 213 457 8080 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 PM and was reported complete and without error. The transmission report, which is attached to this proof of service, was properly issued by the transmitting fax machine. Service by fax was made by agreement of the parties, confirmed in writing.

☒ per attached list — by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration.

☐ by placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below. A signed proof of service by the process server or delivery service will be filed shortly.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

| | | |
|---|---|---|
| 1 | ☐ | by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.  A copy of the consignment slip is attached to this proof of service. |
| 2 | | |
| 3 | | |
| 4 | ☐ | by transmitting via email to the parties at the email addresses listed below: |

I declare under penalty of perjury under the laws of the United States that the above is true and correct.  Executed on August 16, 2010, at Los Angeles, California.

*Arleen A. Swenson*
Arleen A. Swenson

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Trimed, Inc. v. Stryker Corp.*
USDC, Central District Case No. CV 06-01918 SVW (SHx)

## CM/ECF ELECTRONIC SERVICE LIST

Lee F. Grossman, Esq.
Grossman Law Offices
225 W. Washington Street, Suite 2200
Chicago, IL  60606
Tel: 312.621.9000
Email:   lgrossman@grossmanlegal.com

*Attorneys for Plaintiffs*
TRIMED, INC.

Mark M. Grossman, Esq.
Grossman Law Offices
122 South Michigan Avenue, Suite 1720
Chicago, IL  60603
Tel: 312.294.0500
Email:   mgrossman@grossmanlegal.com

*Attorneys for Plaintiffs*
TRIMED, INC.

Sean M. Kneafsey, Esq.
Kneafsey & Friend LLP
800 Wilshire Boulevard, Suite 710
Los Angeles, CA  90017
Tel: 213.892.1200
Fax: 213.892.1208
Email:   skneafsey@kneafseyfriend.com

*Attorneys for Plaintiffs*
TRIMED, INC.

Sarah J. Bartos, Esq.
McAndrews Held & Malloy
500 West Madison Street
34th Floor
Chicago, IL  60661
Tel: 312.775.8000
Email:   sbartos@mhmlaw.com

*Attorneys for Defendant*
STRYKER CORPORATION

PROOF OF SERVICE

US_ACTIVE-104048408.1

*Trimed, Inc. v. Stryker Corp.*
USDC, Central District Case No. CV 06-01918 SVW (SHx)

## CM/ECF MANUAL SERVICE LIST

Jeffrey M. Drake, Esq.
Grossman Law Offices
122 South Michigan Avenue
Suite 1720
Chicago, IL  60603
Tel: 312.294.0500

*Attorneys for Plaintiffs*
*TRIMED, INC.*

Gregory J. Vogler, Esq.
Robert A. Surrette, Esq.
McAndrews Held & Malloy
500 West Madison Street
34th Floor
Chicago, IL  60661
Tel: 312.775.8000

*Attorneys for Defendant*
*STRYKER CORPORATION*